UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JORDAN L. BOOKER, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:20-cv-04312 |
| | § | |
| KILOLO KIJAKAZI, ACTING | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

Plaintiff Shanequa Booker ("Booker")[1] seeks judicial review of an administrative decision denying her application for disability insurance benefits under Title II of the Social Security Act (the "Act"). *See* Dkt. 1. Before me are competing motions for summary judgment filed by Booker and Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration (the "Administration" or "Commissioner").[2] *See* Dkts. 14, 18. After reviewing the briefing, the record, and the applicable law, Booker's motion for summary judgment is **DENIED**, and the Commissioner's motion for summary judgment is **GRANTED**.

## BACKGROUND

Booker filed an application for supplemental security income under Title II of the Act on September 26, 2018, alleging disability beginning on August 5, 2018. Her application was denied and denied again upon reconsideration. Subsequently,

---

[1] Booker died during the pendency of this suit. Her son, Jordan L. Booker, has been substituted as the proper party. *See* Dkt. 22. For convenience, I refer directly to Booker throughout this opinion.

[2] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is automatically substituted as a party under Federal Rule of Civil Procedure 25(d).

an Administrative Law Judge ("ALJ") held a hearing and found that Booker was not disabled. Booker filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to (1) whether the Commissioner applied the proper legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence. *See Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (cleaned up). The ALJ uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4)

2

whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id.* Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

The ALJ found at Step 1 that Booker had "not engaged in substantial gainful activity since August 5, 2018, the alleged onset date." Dkt. 12-3 at 13.

The ALJ found at Step 2 that Booker suffered from "the following severe impairments: status post aortic resection, aortic aneurysm, left ventricular hypertrophy, chronic kidney disease, polycystic kidney disease, polycystic liver disease, essential hypertension and generalized anxiety disorder." *Id.*

At Step 3, the ALJ found that none of these impairments met any of the Social Security Administration's listed impairments.

Prior to consideration of Step 4, the ALJ determined Booker's RFC as follows:

> [Booker] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant is limited to occasional climbing of ramps, stairs, stooping, kneeling, crouching, crawling and balancing. The claimant is restricted from climbing ladders, ropes or scaffolds. The claimant must avoid all exposure to unprotected heights and hazardous machinery. The claimant is limited to simple, routine, 1-2-3 step tasks, with no fast-paced production work.

3

*Id.* at 15.

At Step 4, the ALJ found that Booker is incapable of performing past relevant work as a leasing manager or office manager.

At Step 5, the ALJ considered Booker's RFC, age, education, and work experience in conjunction with the Medical Vocational Guidelines to determine if there was any other work she could perform. Based on the relevant factors, the ALJ concluded that Booker was "not disabled," and that she was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* at 21. The ALJ accepted the vocational expert's testimony that Booker could still perform numerous occupations, including but not limited to: order clerk (DOT 209.567-014), surveillance system monitor (DOT 379.367-010), and document preparer (DOT 249.587-018). *See id.* at 20–21. Accordingly, the ALJ determined that Booker was not disabled and therefore unentitled to benefits.

## DISCUSSION

This appeal concerns one issue: At Step 3, did the ALJ properly conclude that Booker's aortic aneurysm did not meet Listing 4.10? Based on the record before me, I find that the ALJ did not err.

At Step 3, the ALJ must determine if a claimant's impairments meet or equal a listed impairment. *See* 20 C.F.R. § 416.920(a)(4)(iii). The listing of impairments "describes for each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Id.* § 416.925(a). To meet a listed impairment, a claimant must establish that she meets each characteristic of a listed impairment relevant to her claim. *See id.* § 416.925(d). If a claimant meets the criteria for a listed impairment, she will be considered disabled without consideration of vocational factors. *See id.* § 416.920(a)(4)(iii). The claimant bears

4

the burden of establishing that she meets a listing. *See Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990).

A claimant meets Listing 4.10 "Aneurysm of the aorta or major branches, due to any cause," if the aneurysm is "demonstrated by appropriate medically acceptable imaging, with dissection not controlled by prescribed treatment (see 4.00(H)(6))." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.10. Under § 4.00(H)(6), an aneurysm is dissecting when the inner lining of the artery begins to separate from the arterial wall, and it is not controlled when the claimant has either persistent "chest pain due to progression of the dissection, an increase in the size of the aneurysm, or compression of one or more branches of the aorta supplying the heart, kidneys, brain, or other organs." *Id.*

Applying Listing 4.10, the ALJ found that Booker did not meet Listing 4.10 because he "found no evidence of dissection (demonstrated by appropriate medically acceptable imaging) not controlled by prescribed treatment." Dkt. 12-3 at 14.

In this appeal, Booker first notes that the medical record clearly reflects that she suffered from an aneurysm with dissection, and she underwent surgery to treat the condition. She is correct on this point. The existence of the aneurysm, however, is not the point in controversy. The issue is whether the aneurysm was under control. As explained above, the regulations provide that an aneurysm is not under control when the claimant suffers persistent "chest pain **due to progression of the dissection**, **an increase in the size of the aneurysm**, or **compression of one or more branches of the aorta**." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.00(H)(6) (emphasis added).

To satisfy her evidentiary burden, Booker directs me to various medical records reflecting her occasional reports of chest pain. However, she has not pointed me to evidence that the chest pain was due to progression of the dissection. Similarly, Booker has not directed me to any evidence demonstrating that her

5

aneurysm increased in size or the compression of one or more branches of the aorta. *See id.* Indeed, Booker's strongest evidence that her condition was not under control is her death certificate, which indicates that an "aortic aneurysm" was among her several causes of death. *See* Dkt. 14-1. *See also* Dkt. 14-2 (hospital discharge summary stating that prior to her death, Booker was hospitalized for "Type B Aortic dissection and aneurysm"). The problem with this evidence is that it too does not speak to the progression of the dissection, an increase in the size of the aneurysm, or compression of one or more branches of the aorta. Arguably, such evidence may exist in the medical records generated during Booker's hospitalization, but those records are not before me.

Based on what is before me, I conclude that substantial evidence supports the ALJ's determination that Booker failed to show that she met all of the elements of Listing 4.10 because the treatment records and other evidence do not show that Booker had persistent chest pain, that her dissection progressed, that the size of her aneurysm increased, or that there was compression of any branch of her aorta supplying her heart, kidneys, brain, or other organs. *See Gerrick v. Comm'r of Soc. Sec.*, No. 16-2664, 2017 WL 5992235, at *1 (6th Cir. Aug. 14, 2017).

## CONCLUSION

For the reasons provided above, Booker's motion for summary judgment is **DENIED**, and the Commissioner's motion for summary judgment is **GRANTED**.

SIGNED this 4th day of March 2022.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE